**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re Sarepta Therapeutics Securities Litigation* | Civil Action No. 1:25-cv-05317 (PAE) <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) AND MOTION
TO STAY ENTRY OF ANY CASE SCHEDULE PENDING ADJUDICATION OF THE
TRANSFER MOTION**

Anthony Defilippis, Nicholas Barrass, William Wrede, and Robert Feldstein ("Lead Plaintiffs"), by and through their undersigned counsel, submit this memorandum of law in support of their motion to transfer venue to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) ("Motion to Transfer") and to stay the entry of any case schedules pending the adjudication of that motion to transfer.[1]

## I.      PRELIMINARY STATEMENT

As Defendants (and their counsel) have asserted in prior securities fraud litigation initially filed in this District, litigating this case in this District will pose substantial difficulties for all parties, and the District of Massachusetts is, by far, the more convenient forum for this case. *See Salinger v. Sarepta Therapeutics, Inc. et al.*, 1:19-cv-08122 (S.D.N.Y.) (ECF No. 36). Sarepta Therapeutics, Inc. ("Sarepta" or the "Company") is headquartered in Massachusetts, and the documents and other tangible evidence to be produced in this case reside there. Many of the likely witnesses in this case – including a preponderance of the Company's employees, directors, and officers, and, in particular, named Defendants and senior Sarepta executives Douglas S. Ingram, and Dallan Murray – live and/or work in Massachusetts.  Moreover, the Court-appointed Lead Plaintiffs did not choose to file the initial complaint in this District; as stewards of the Class' claims, their choice of venue, Massachusetts, is entitled to considerable weight.  The Court should therefore grant Lead Plaintiffs' unopposed Motion to Transfer.  Further, to maximize judicial efficiency and to preserve any transferee court's ability to exercise its prerogative to order this litigation, the Court stay entry of any case schedules pending disposition of the Motion to Transfer.

---

[1] Defendants do not oppose Lead Plaintiffs' Motion to Transfer.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2025, Plaintiff Daniel Dolgicer filed a class action complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities Exchange Commission rule 10b-5, promulgated thereunder. ¶ 12.[2] The complaint alleges that Sarepta is a publicly traded biopharmaceutical company incorporated in Delaware and headquartered in Cambridge, Massachusetts. ¶ 23. Sarepta's principal executive offices are located at 215 First Street, Suite 415, Cambridge, MA. ¶ 17. Sarepta is a commercial-stage biopharmaceutical company that focuses on RNA and gene therapies for the treatment of rare diseases such as muscular dystrophy. ¶ 2. Aside from the allegation that Sarepta's securities trade on the Nasdaq, a securities exchange located within this Judicial District (¶ 14), the complaint is devoid of any allegations that link the claims central to this case, to wit, the alleged false and misleading statements, to the State of New York.

The complaint also did not plead any facts as to the home or work locations of the Individual Defendants, but publicly available information indicates that two out of three Individual Defendants live and work in Massachusetts. In particular, Defendant-CEO Ingram resides in Massachusetts and works at the Sarepta headquarters in Cambridge, Massachusetts.[3] Defendant-Senior Vice President and Chief Commercial Officer Dallan Murray is based in Needham, Massachusetts.[4]

On October 17, 2025, the Court entered an order and opinion appointing Anthony Defilippis, Nicholas Barrass, William Wrede, and Robert Feldstein as Lead Plaintiffs in this action and approving Lead Plaintiffs' selection of Grant & Eisenhofer P.A. and The Schall Law Firm as

---

[2] References to "¶" or "¶¶" are to the first-filed complaint at ECF No. 1.

[3] https://www.linkedin.com/in/doingram (last accessed Oct. 21, 2025).

[4] https://www.linkedin.com/in/dallan-murray-82a9b61a (last accessed Oct. 21, 2025).

Lead Counsel for the Class (the "Order"). ECF No. 84. In its Order, this Court ordered the parties to confer regarding a schedule for filing an amended complaint and related briefing and to file a proposed schedule by no later than October 24, 2025. *Id.*

## III.    ARGUMENT

"District courts have broad discretion in making determinations of convenience." *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2013 WL 5656086, at *1 (S.D.N.Y. Oct. 9, 2013).[5]  This is particularly true in securities fraud cases because "[c]ongress created broad venue provisions" for the Securities Exchange Act of 1934, "permitting Plaintiffs to bring the claims in a broad array of districts." *Manchin v. PACS Grp., Inc.*, 2025 WL 1276569, at *4 (S.D.N.Y. May 1, 2025). As such, "[t]ransfers to the issuer's home district are routine, as a practical matter." *In re AtheroGenics Sec. Litig.*, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006); *see also SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (same) (Engelmayer, J.).  Section 1404(a) was designed "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 278 (S.D.N.Y. 2000).  Thus, "Section 1404(a) gives district courts wide latitude to decide whether to transfer venue." *SBAV*, 2013 WL 3467030, at *3.

### A.    THIS CASE COULD HAVE BEEN BROUGHT IN THE DISTRICT OF MASSACHUSETTS

Courts engage in a two-step inquiry in determining whether transfer is appropriate. *Moeller-Bertram v. Gemini Tr. Co., LLC*, 2024 WL 1860061, at *2 (S.D.N.Y. Apr. 29, 2024).  As a threshold matter, courts first determine whether the action "could have been brought in the proposed transferee court," *id.*, that is, whether the defendant is subject to personal jurisdiction in

---

[5] Unless otherwise noted, all internal quotations and citations are omitted and all emphasis is added.

the transferee district and if venue would be proper, *see Manchin*, 2025 WL 1276569, at \*5.

Dolgicer undoubtedly could have – and, indeed, should have – brought this case in the District of Massachusetts.  Defendants are all subject to personal jurisdiction there.[6] *See Id.* Further, venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because, overwhelmingly, the events underlying the claims at issue in this case occurred there.  15 U.S.C. § 78aa(a); *Ahrens v. CTI Biopharma Corp.*, 2016 WL 2932170, at \*3 (S.D.N.Y. May 19, 2016) (Engelmayer, J).  Because Defendants reside and transact business in Massachusetts, and the great bulk of the events underlying Lead Plaintiffs' and the Class' claims occurred in Massachusetts, this case could have been brought in the District of Massachusetts.

Indeed, as Defendants Sarepta and Ingram argued in their prior motion to transfer securities litigation out of this District and to Massachusetts, "[t]he District of Massachusetts is ***undeniably*** an appropriate venue for this dispute, because a federal securities action may be brought . . . in the district wherein the defendant is found or is an inhabitant or transacts business . . ." *See Salinger* ECF No. 36 at 3 (Mem. of Law in Support of Motion to Transfer) ("*Salinger* Motion"), attached as Exhibit A.

### B.    THE NINE FACTORS WEIGH IN FAVOR OF TRANSFER

Once it determines that the threshold criterion is satisfied, the court considers "whether the balance of convenience and justice favors transfer." *Fransway v. BAC Home Loan Servicing, LLP*, 2014 WL 1383260, at \*1 (S.D.N.Y. Apr. 2, 2014).  This inquiry requires a balancing of the following nine factors to determine whether transfer is warranted:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the

---

[6] Although, Defendant Rodino-Klapac appears to reside in Ohio, there is an expectation that she "may be haled into court in" Massachusetts because, as a full-time employee of Massachusetts-based Sarepta, she "purposefully availed" herself of the "privilege of doing business in the forum." *Peeq Media, LLC v. Buccheri*, 2016 WL 5947295, at \*4 (S.D.N.Y. Oct. 13, 2016).

convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Joyner v. Cont'l Cas. Co.*, 2012 WL 92290, at *1 (S.D.N.Y. Jan. 9, 2012); *Kohl's*, 2013 WL 5656086, at *1. These factors counsel in favor of transfer here.

### 1. Lead Plaintiff's Choice of Forum

Here, although Dolgicer filed the initial Complaint in this matter, he is no longer a named plaintiff in this action and thus his "choice of forum" is irrelevant or should not be afforded great weight. By contrast, the Court appointed the Investor Group as Lead Plaintiffs in this action on October 17, 2025, making them responsible for guiding this litigation on behalf of all putative Class members. ECF No. 84. Lead Plaintiffs did not file the initial Complaint and did not select the Southern District of New York as their forum.[7] The Court should credit Lead Plaintiffs' choice of forum, the District of Massachusetts, not Dolgicer's choice of forum, in analyzing this factor.

### 2. Convenience of the Witnesses

The convenience of the witnesses is generally considered the most important factor in deciding a motion to transfer venue. *Truk Int'l Fund, LP v. Wehlmann*, 2009 WL 1456650, at *3 (S.D.N.Y. May 20, 2009). "The convenience of non-party witnesses is accorded [even] more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005); *see also In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (noting the convenience of non-party witnesses as an important factor). Here, as Defendants Sarepta and Ingram previously acknowledged, the District of

---

[7] Lead Plaintiffs therefore do not need to show a "change of circumstances" to transfer this action. *See In re Anadarko Petroleum Corp.*, 2012 WL 12894796, at *4 (S.D.N.Y. Mar. 19, 2012) (The logic behind the "changed circumstances" rule is that "the plaintiff initially has the choice of forum," and thus it is "sensible" to require a plaintiff who initially chooses a forum to explain why it is not in the interests of justice for the case to proceed in that forum.").

Massachusetts is the more convenient district for the witnesses in this case.  Ex. A at 6.  Such non-party witnesses are likely to include Sarepta's current and former employees, officers, and directors, most of whom work at Sarepta's headquarters in Cambridge and live in Massachusetts and who are subject to that district's, not this Court's, subpoena power.  *See CTI Biopharma*, 2016 WL 2932170, at *4 (finding that the Western District of Washington was more convenient where most of defendant biopharmaceutical company's employees, officers, and directors worked and resided in the state of Washington and were thus subject to that district's subpoena power).  Indeed, in a declaration attached to the *Salinger* Motion, Sarepta's general counsel represented that "[t]he vast majority of Sarepta's officers and employees who were involved in drafting or disseminating Sarepta's press releases and SEC filings," i.e., the statements at issue in this securities class action, "work at Sarepta's Massachusetts headquarters." *See Salinger* ECF No. 37 ¶ 6 (Declaration of Jessica P. Driscoll in Support of Defendants' Motion for Transfer of Venue to the District of Massachusetts) (Exhibit B). Other third parties involved in the facts underlying this case, including clinical laboratories and manufacturers like Thermo Fisher Scientific, are also based in Massachusetts.

### 3.    Convenience of the Parties

Courts consider the parties' principal places of business, office locations, or residences in determining whether transfer is convenient for the parties. *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *5 (S.D.N.Y. May 5, 2021).  "[T]here is naturally a presumption that the location of a party's residence is a convenient forum for that party." *Id.* at 5.  As stated *supra*, three out of four Defendants are located in Massachusetts. As to Defendant Louise Rodino-Klapac, who appears to be located in Ohio, her position as one of the most senior executives at a company headquartered in Massachusetts belies any argument of potential inconvenience.  Moreover, there is no reason to believe that Massachusetts would be a more inconvenient forum for Rodino-Klapac

than the Southern District of New York.

Again, in the *Salinger* Motion, Defendants acknowledged that this factor weighs in favor of transfer. In that motion, Sarepta and Ingram argued that "[b]ecause Sarepta is headquartered in Massachusetts and the Individual Defendants work and reside there, 'lengthy proceedings in New York are more likely to lead to some disruption to [Sarepta's] day-to-day operations' than proceedings in Massachusetts." Ex. A at 5 (citing *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *5 (S.D.N.Y. Apr. 30, 2015)). Accordingly, this factor also weighs in favor of transfer.

### 4.    Locus of Operative Facts

"The locus of operative events in a securities action is where the alleged misrepresentations were made. In a securities lawsuit, the alleged misrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *Erickson v. Corinthian Colleges, Inc.*, 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013). Here, all or substantially all of Sarepta's SEC filings, press releases, and conference calls, were prepared at Sarepta's headquarters in Cambridge, Massachusetts. *See* Ex. A at 4 (Sarepta and Ingram representing in the *Salinger* Motion that "each of the challenged statements in Sarepta's press releases and SEC filings was made in, and transmitted from, the Company's headquarters in Massachusetts," and arguing that the "locus of operative facts" factor "weighs heavily in favor of transfer."); *see also* Ex. B ¶ 5. Save for the fact that Sarepta trades on the Nasdaq, which is based in New York, "there are no facts tying this action here that would warrant ignoring [Massachusetts'] intimate connection to the events underpinning this case and its status as the locus of the alleged fraud." *AtheroGenics*, 2006 WL 851708, at *4. Because, as Defendants themselves have previously argued, the locus of operative facts is in Massachusetts, this factor too weighs in favor of transfer.

### 5.    Transfer Promotes Trial Efficiency and the Interests of Justice

Litigating this case in Massachusetts rather than New York would promote trial efficiency and the interests of justice.  The action is in the early stages of litigation; a transfer now will not be disruptive and will allow the transferee court maximum flexibility in ordering the case so as to maximize judicial efficiency.[8]  *See Baytree Cap. Assocs., LLC ex rel. Broadcaster, Inc. v. Quan*, 2008 WL 1809606, at *6 (S.D.N.Y. Apr. 18, 2008) (that the actions were in the early stages of litigation supported trial efficiency and interests of justice factor).  Moreover, as discussed above, most non-party witnesses cannot be subpoenaed for trial in this District, but can be so subpoenaed in Massachusetts.

And, not unimportantly, the Southern District of New York's docket is far more congested than that of the District of Massachusetts, *e.g.*, as of March 31, 2025, there were 16,680 cases pending in the S.D.N.Y. as compared to just 5,751 pending in the District of Massachusetts.[9]  These facts further support transfer.  *See Indian Harbor Ins. Co. v. NL Env't Mgmt. Servs., Inc.*, 2013 WL 1144800, at *11 (S.D.N.Y. Mar. 19, 2013) ("The relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)."). Because trial efficiency and the interests of justice will be advanced if this case is transferred to Massachusetts, the final factor further counsels in favor of transfer.

### 6.    The Remaining Factors Do Not Counsel Against Transfer

The remaining factors are inapplicable in the instant case, and therefore do not weigh

---

[8] In the *Salinger* Motion, Sarepta and Ingram likewise argued that because the action was "at the very earliest stage," transfer would "not cause any undue delay" or "waste judicial or party resources." Ex. A at 7-8.

[9]  *See United States District Courts—National Judicial Caseload Profile*, U.S. COURTS, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2025.pdf. *See also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) ("It is undeniable that the Southern District of New York is one of the busiest district courts in the country.").  Again, Sarepta and Ingram made this same argument in the *Salinger* Motion.  Ex. A at 7-8 ("[t]he District of Massachusetts has fewer pending cases than this District.").

against transfer.[10] As for the third factor—location of relevant documents—though most of the documents anticipated to be found relevant are presumably at Sarepta's headquarters in Cambridge, Massachusetts, electronic discovery has simplified the exchange of documents for discovery purposes, and thus this factor is "less important." *See Doshi v. Gen. Cable Corp.*, 2014 WL 12774226, at *4 (S.D.N.Y. Feb. 5, 2014). The sixth factor—the availability of the process to compel—is also neutral because "neither side has identified witnesses who are unwilling to testify." *See id.* The seventh factor—the relative means of the parties—is irrelevant here because both parties have the means to litigate the case in the District of Massachusetts.[11] The eighth factor—the forum's familiarity with the governing law—is neutral as "[f]ederal courts throughout the nation are equally capable of applying federal securities laws." *In re Global Cash Access Holdings Inc. Sec. Litig.*, 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008).

The balance of the foregoing factors weighs in favor of transferring this action to the District of Massachusetts.

## IV.    THE COURT SHOULD STAY THE ENTRY OF ANY CASE SCHEDULE PENDING ADJUDICATION OF THIS MOTION TO TRANSFER

Finally, pending adjudication of the instant Motion to Transfer, this Court should stay entry of any case scheduling order on the parties' proposed briefing schedule for submitting an amended complaint and associated briefing so that, should the Court transfer this case, the transferee forum––the District of Massachusetts—can exercise its prerogative to set the case schedule. As this Court has explained, "It is common for courts to stay an action pending a transfer decision." *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 87 F. Supp. 3d 463, 471-72 (S.D.N.Y. 2015)

---

[10] In the *Salinger* Motion, Sarepta and Ingram agreed that the four remaining factors were neutral and did not weigh against transfer. *See* Ex. A at 8-9.

[11] If anything, transfer to Massachusetts would minimize Defendants' burden in litigation this case because, as discussed above, most relevant Sarepta personnel reside in that state.

(Engelmayer, J.). Given the early stage of the proceedings, a short stay will prejudice neither party, while it will leave the transferee court flexibility in ordering the case so as to maximize judicial efficiency. *See id.* ("[C]ourts in this Circuit have recognized that stays pending transfer will also conserve judicial resources"); *Pierre v. Prospect Mortg., LLC*, 2013 WL 5876151, at *4 (N.D.N.Y. Oct. 31, 2013) (a temporary stay would "promote judicial economy and efficiency by avoiding duplicative efforts by this Court and the transferee court").

A brief stay will also maximize party efficiency by ensuring that the parties do not prepare and file pleadings and briefs that will need to be revised and refiled because of any change in venue. *See, e.g.*, *McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2024 WL 5315308, at *1 (S.D.N.Y. Dec. 16, 2024) ("[P]ermitting this action to move forward when it may be transferred to the MDL would prejudice Defendant by creating the risk [it] will be subject to duplicative proceedings."); *Rosenfeld v. Hartford Fire Ins. Co.*, 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988) ("We find that judicial resources and the defendants' resources may well be fruitlessly spent if a stay is not granted pending the outcome of the Panel's decision on the transfer motion."). Accordingly, a brief stay of entry of any scheduling order pending adjudication of Lead Plaintiffs' Motion to Transfer is warranted.

## V.        CONCLUSION

For the reasons stated herein, this Court should grant Lead Plaintiffs' unopposed Motion to Transfer venue to the District of Massachusetts and, pending disposition of that motion, stay the entry of a case schedule for filing the amended complaint and related briefing.

Dated: New York, New York
October 24, 2025

Respectfully submitted,

*/s/ Abe Alexander*
Karin E. Fisch
Abe Alexander
Mica A. Cocco
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
kfisch@gelaw.com
aalexander@gelaw.com
mcocco@gelaw.com

Brian J. Schall (*pro hac vice)*
Andrew J. Brown (*pro hac vice*)
William M. Brody (*pro hac vice*)
Adam L. Rosen (*pro hac vice*)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel.: (310) 301-3335
Fax: (310) 388-0192
brian@schallfirm.com
andrew@schallfirm.com
wbrody@schallfirm.com
adam@schallfirm.com

*Counsel for Lead Plaintiffs the Investor Group and Lead Counsel for the Proposed Class*

11

**CERTIFICATE OF WORD COUNT**

I, Abe Alexander, hereby certify that this memorandum of law contains 3,278 words, exclusive of the caption, signature blocks, and this certificate, which complies with the word limit of Local Civil Rule 7.1(c).

Dated: October 24, 2025                                      */s/ Abe Alexander*
                                                             Abe Alexander