**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE SAREPTA THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No. 1:25-cv-13530-BEM |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ..................................................................................................1

II.    LEGAL STANDARD...............................................................................................2

III.   THE COURT SHOULD REFUSE TO NOTICE THE CHALLENGED
       EXHIBITS AND SHOULD REFRAIN FROM ACCEPTING ANY EXHIBIT
       FOR ITS TRUTH ....................................................................................................4

       A.    Challenged Exhibits Cited For Background Information
             Already Alleged in the Complaint ................................................................4

       B.    FDA Advisory Committee Transcript, Press Releases, and Review
             Memorandum - Exhibits 4, 14, 15, and 24 .................................................4

       C.    Pre-Class Period SEC Filings - Exhibits 37-38 ..........................................8

       D.    Sarepta Call Transcripts, Press Releases, and Presentations –
             Exhibits 2, 11, 21, 26, 29, 30, 32, 33, and 36 ............................................9

       E.    Wall Street Journal Editorials – Exhibits 22 and 23 .................................10

IV.    CONCLUSION.....................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
267 F.3d 30 (1st Cir.2001)................................................................................................2

*Am. Bd. of Internal Med. v. Salas Rushford*,
114 F.4th 42 (1st Cir. 2024).............................................................................................3

*In re Amgen Inc. Sec. Litig.*,
2014 WL 12585809 (W.D. Wash. Aug. 8, 2014)..............................................................7, 9

*Archdiocese of Milwaukee Supporting Fund v. Invs. Fin. Servs. Corp.*,
2007 WL 9797807 (D. Mass. July 31, 2007)....................................................................1

*Cebollero-Bertran v.Puerto Rico Aqueduct & Sewer Auth.*,
4 F.4th 63 (1st Cir. 2021)..............................................................................................10

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
228 F.3d 24 (1st Cir. 2000).............................................................................................2

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019).......................................................................3

*Hills v. BioXcel Therapeutics, Inc.*,
2024 WL 3374145 (D. Conn. July 11, 2024) ....................................................................7

*Hsu v. Puma Biotechnology, Inc.*,
213 F. Supp. 3d 1275 (C.D. Cal. 2016) ...........................................................................3

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005)..............................................................................3

*Kader v. Sarepta Therapeutics, Inc.*,
2016 WL 1337265 (D. Mass. Apr. 5, 2016) .....................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..........................................................................................1

*Linenweber v. Southwest Airlines Co.*,
693 F. Supp. 3d 661 (N.D. Tex. 2023) .............................................................................7

*McLeod v. Fessenden School*,
624 F. Supp. 3d 36 (D. Mass. 2022) ...............................................................................4

*Olsen v. Agenus Inc.*,
  2026 WL 810814 (D. Mass. Mar. 24, 2026)........................................................................9, 10

*Padilla v. City of Gallup*,
  2006 WL 8444138 (D.N.M. June 28, 2006).............................................................................11

*Piercy v. AT&T Inc.*,
  2025 WL 2505660 (D. Mass. Aug. 29, 2025) .......................................................................2, 6

*Shash v. Biogen Inc.*,
  627 F. Supp. 3d 84 (D. Mass. Sept. 12, 2022)............................................................................9

*Shulse on Behalf of Shulse v. W. New England Univ.*,
  2020 WL 4474274 (D. Mass. Aug. 4, 2020) ...............................................................................2

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ..............................................................................5

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
  524 F.3d 315 (1st Cir. 2008)......................................................................................................2

*Watterson v. Page*,
  987 F.2d 1 (1st Cir. 1993).......................................................................................................1, 2

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................3, 6

Fed. R. Civ. P. 56...........................................................................................................................2

iii

## I.    INTRODUCTION

Tacitly acknowledging that the facts ***actually*** alleged in the Complaint state a claim, Defendants submit an astonishing ***59 exhibits***, totaling 733 pages, at the pleading stage, in an effort to improperly substitute a cherry-picked record – and their inaccurate and incomplete gloss of that record – for the Complaint's well-pled allegations. The Court should reject Defendants' transparent attempt to improperly litigate the facts of this case on a motion to dismiss and deny their Request for Incorporation by Reference and Judicial Notice (ECF 149, "Request") as to the Challenged Exhibits identified below.

The First Circuit has emphasized that "[o]rdinarily, on a motion to dismiss, the court may not consider documents not attached to the complaint or expressly incorporated therein without converting the motion into one for summary judgment." *Archdiocese of Milwaukee Supporting Fund v. Invs. Fin. Servs. Corp.*, 2007 WL 9797807, at \*1 (D. Mass. July 31, 2007); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). As courts across the country have recognized, incorporation by reference and judicial notice represent ***exceedingly*** narrow exceptions to this rule. These exceptions are narrow for good reason: "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery," a risk that is heightened in securities fraud litigation "where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018). Nevertheless, Defendants submit a voluminous appendix in connection with their Motion to Dismiss (ECF Nos. 147 & 148, "DB"), including at least 21 exhibits that are nowhere cited in the four corners of the Complaint and 18 of which are not even cited in ***Defendants'*** Motion.

1

Defendants' Request underscores the fact-intensive character of their Motion to Dismiss and makes plain that their arguments – which rest on (incorrect) factual assertions about, among other things, complex scientific and medical facts, the views of regulators and the medical community at large, and the causes of Sarepta stock price movements – are not suitable for resolution at this stage. The Challenged Exhibits are not "referred to in the complaint," "central" to Plaintiffs' claims, or of undisputed "authenticity," and, as such, may not be considered. *Watterson*, 987 F.2d at 3. Moreover, Defendants improperly seek to introduce many of their exhibits, Challenged or not, for the truth of matters asserted therein. *Piercy v. AT&T Inc.*, 2025 WL 2505660, at *38 n.27 (D. Mass. Aug. 29, 2025).

## II.    LEGAL STANDARD

"The district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). "There is, however, a ***narrow exception*** for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). With respect to this last exception, "[t]he First Circuit has made clear that mere mention of a document in the complaint does not amount to sufficient reference." *Shulse on Behalf of Shulse v. W. New England Univ.*, 2020 WL 4474274, at *2 (D. Mass. Aug. 4, 2020); *see also Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (document must be "integral to or explicitly relied upon in the complaint").

Moreover, even where a document is properly judicially noticed, "the court may not assume the truth of factual claims" in that document, "particularly when doing so would require it

2

to abandon its obligation to assume the truth of the plaintiff's factual claims." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 57 (1st Cir. 2024). Indeed, courts routinely decline to take judicial notice of documents where Defendants' primary purpose in submitting them is, as here, to improperly "contest the allegation[s]" in the Complaint at the pleading stage. *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *10 (D.N.J. Dec. 27, 2019).

In particular, courts have repeatedly rejected "inappropriate efforts by defendants" in securities fraud cases, including by Defendants' same counsel here, to submit appendices brimming with extrinsic documents as thinly veiled efforts to draw the court into improperly resolving factual disputes at the pleading stage. *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016). In rejecting Defendants' counsel's request for judicial notice, the *Hsu* court explained:

> Nowadays, it seems more and more common to come across Rule 12(b)(6) motions to dismiss filed with hundreds of pages of attachments, authenticated through attorney declarations . . . . Too often, ***these mountainous motions make arguments more appropriate for a motion for summary judgment or some other later stage of the case***. Nonetheless, with little to lose, too many defense attorneys are tempted by the puncher's chance offered by such a motion. At worst, they lose a generally inexpensive motion. But at best, they can knock their opponent out cold, right at the beginning of round one. In this way, ***efforts to expand courts' consideration of extrinsic evidence at the motion to dismiss stage . . . diminish the ability of wronged plaintiffs to get their constitutionally-protected day in court*** . . . . Such trends are particularly troubling in the common situation of asymmetry, where a defendant starts off with sole possession of the information about the alleged wrongdoing.

*Id.*; *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005) ("consideration of the exhibits encourages weighing of factual disputes; a process that is improper" at this stage).

**III.    THE COURT SHOULD REFUSE TO NOTICE THE CHALLENGED EXHIBITS AND SHOULD REFRAIN FROM ACCEPTING ANY EXHIBIT FOR ITS TRUTH**

The Court should deny Defendants' Request as to the Challenged Exhibits because they are not incorporated by reference into the Complaint, are not subject to judicial notice, and may not be considered for their truth, as Defendants improperly urge the Court to do.

**A.    Challenged Exhibits Cited For Background Information Already Alleged in the Complaint**

Defendants cite the majority of their Exhibits for background information that is duplicative of the Complaint's allegations. *See, e.g.*, DB 4 (citing **Exhibit 1** for the background of DMD, alleged in ¶2); DB 6 (citing **Exhibit 5** for the background of the EMBARK trial and the ELEVIDYS label, alleged in ¶¶43, 48, 51, 94, 99, 102); DB 7, 18 (citing **Exhibit 14** for FDA's expansion of the approval of ELEVIDYS, alleged in ¶49); DB 9 (citing **Exhibit 20** for Black Box warning that was added by the FDA to the ELEVIDYS label, alleged in ¶163); DB 9, 20 (citing **Exhibit 21**, Sarepta press release not referred to in the Complaint, to discuss patient deaths due to ELEVIDYS, alleged in ¶164).

Courts rightly decline to take judicial notice of documents that are "essentially duplicative of the facts alleged in the complaint." *McLeod v. Fessenden School*, 624 F. Supp. 3d 36, 41 n.2 (D. Mass. 2022); *Kader v. Sarepta Therapeutics, Inc.*, 2016 WL 1337265, at *10 (D. Mass. Apr. 5, 2016) (granting motion to strike where, "[a]lthough these exhibits may have provided helpful context, they are not properly before the Court, nor are they essential to evaluating the sufficiency of the Complaint"). The Court should do the same here.

**B.    FDA Advisory Committee Transcript, Press Releases, and Review Memorandum - Exhibits 4, 14, 15, and 24**

Defendants' **Exhibit 4** purports to be a transcript of a May 12, 2023 meeting held by an FDA Advisory Committee, *i.e.*, a panel of non-agency health care professionals. The Complaint

4

references the FDA's observations at this meeting that at least some of the preclinical safety data Sarepta submitted was inconsistent with actual data recorded by lab equipment and that control parameters appeared to be missing. ¶75. The Complaint alleges that the FDA's observations corroborate FE 1's report that Sarepta's preclinical safety testing was fatally compromised by widespread data fraud that included pervasive "testing into compliance." *Id.*

Putting aside that this single allegation is hardly "integral" to the Complaint, Defendants do not cite **Exhibit 4** in connection with this allegation at all. Instead, they falsely assert that it shows the FDA concluded that Hy's Law was an "unreliable" measure of liver toxicity in gene therapies. DB 17. Defendants not only ignore the Complaint's allegations to the contrary, they manufacture this factual dispute by ***blatantly mischaracterizing the document***. Defendants cite, ***not*** a statement by the FDA, but rather comments made by ***Sarepta employee*** Eddie Darton. *Id.*; Dx 4 at 53. Moreover, Darton nowhere even ***mentions*** Hy's Law; he states only that damaged muscle from DMD can increase patients' baseline aminotransferase ("AT"). Dx 4 at 53. Neither Darton nor the FDA ever stated that Hy's Law was unimportant in evaluating rh74's safety. And with good reason, as the driver of Hy's Law is dramatically elevated ***bilirubin*** – a glaring marker of liver, not muscle, damage. ¶89.[1] The Complaint contains detailed allegations that the FDA views Hy's Law as a critical signal of dangerous liver toxicity, that Rodino-Klapac publicly acknowledged its importance in evaluating rh74's safety, and that Defendants were deeply alarmed when rh74 caused Hy's Law events in patients. ¶¶88-92, 191. Thus, because Exhibit 4 is cited only to (unsuccessfully) create a factual dispute and substitute (incorrect) extrinsic assertions for the Complaint's allegations, judicial notice is inappropriate. *In re Snap Inc. Sec. Litig.*, 2018 WL

---

[1] If anything, Darton's comments only ***bolster*** the Complaint. Darton's observation shows that Sarepta knew its reporting of safety data, which combines actual injury with transient AT elevations, would wash out a liver signal, since all patients analyzed, including patients in the placebo group, would have elevated AT. ¶99.

2972528, at *4 n.12 (C.D. Cal. June 7, 2018) (denying request for judicial notice where "[d]efendants base their arguments on inferences, the truth of the documents' contents, and factual disputes arising from their proffered exhibits"); *see also Piercy*, 2025 WL 2505660, at *37 ("Defendants' briefs are replete with invitations to take judicial notice of various facts and circumstances that might cast into a different light the aspersions that the Complaint casts on Athene . . . . Such an open-ended evaluation, however, is a fact-intensive inquiry that does not comport with the strictures of Rule 12(b)(6).").[2]

Likewise, the purported FDA news release submitted as **Exhibit 14** is not cited at all in the Complaint, let alone "integral to it." Defendants claim that this news release shows a reasonable investor would have understood that "only a 'modest amount of safety data on non-ambulatory individuals with DMD' was available." DB 17-18. But, again, that is not what the FDA release says. It says that ***Sarepta submitted, and the FDA reviewed***, a "modest" amount of non-ambulatory safety data in connection with the 2023 expanded label submission. Dx 14 at 4. Indeed, in connection with this review, Sarepta submitted to the agency only a subset of clinical data predating September 13, 2023, and no commercial data. By contrast, Sarepta repeatedly told investors that ***the Company*** had amassed an "***enormous***" amount of non-ambulatory safety data, which included commercial data and clinical data post-dating the 2023 data cutoff for the FDA submission refenced in **Exhibit 14**.[3] Even putting aside the fact that Defendants mischaracterize **Exhibit 14** and ignore their own repeated Class Period-statements, Defendants' "truth on the

---

[2] Extrinsic documents Defendants did not submit further contradict their factual assertions. For instance, FDA gene therapy reviews all categorize adverse events using MedDRA SOC, including hepatobiliary adverse events, and focus on bilirubin, consistent with Hy's Law. *See, e.g.*, *Zolgensma BLA Clinical Review Memorandum*, FDA (May 23, 2019), at 23-24, 34-35; *Hemgenix BLA Clinical Review Memorandum*, FDA (2023), at 17, 19, 29-30.

[3] Defendants failed to submit documents reflecting the September 13, 2023 data cutoff date for the label expansion, further underscoring why Defendants' effort to substitute a cherry-picked record for the Complaint is so problematic.

market" argument cannot be resolved as a matter of law on the basis of extrinsic documents. *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *15 (W.D. Wash. Aug. 8, 2014) ("[E]ven assuming, *arguendo*, that the Court took judicial notice of the exhibits Defendants rely on, a dispute of fact precludes the Court from indisputably finding on the current record that the FDA's briefing book was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression."). Again, judicial notice is inappropriate.[4]

Defendants' **Exhibit 15** – an FDA review memorandum – is also not cited in the Complaint and is offered solely for the truth of what (Defendants claim) it asserts. Defendants say that **Exhibit 15** shows that "the FDA publicly overrode an internal review team's recommendation against expanded approval" (DB 7-8), but they once again mischaracterize the document. In truth, **Exhibit 15** shows what the Complaint already alleges, namely that it was Dr. Peter Marks, the head of the FDA's Center for Biologics Evaluation and Research at the time, who ***unilaterally*** overrode the FDA scientific review team's unanimous recommendation against approval. Dx 15 at 95; ¶¶75, 87. At best, **Exhibit 15** is duplicative of the Complaint's allegations and is not entitled to judicial notice.

**Exhibit 24** is July 2025 FDA press release that is likewise nowhere cited in the Complaint. The press release, which followed Sarepta's belated disclosure of a ***third*** rh74-induced fatal liver

---

[4] Defendants also cite **Exhibit 14** for the proposition that the FDA saw "enough 'evidence of effectiveness to support accelerated approval.'" DB 7. But, again, this document cannot be accepted for its truth, particularly as there is no evidence the FDA considered, or even reviewed, the facts Defendants allegedly withheld from investors, including Sarepta's failure to perform preclinical validation of rh74, its manufacturing of sham results, Hy's Law events that Sarepta management pressured scientists to hide from regulators, and data showing that rh74 was far more toxic than competitors that ***post-dated*** the FDA review discussed in **Exhibit 14**. *Hills v. BioXcel Therapeutics, Inc.*, 2024 WL 3374145, *5 (D. Conn. July 11, 2024) (declining to take judicial notice of exhibit showing FDA statistics "for purposes of concluding, as Defendants argue, that Forms 483 are not rare"); *Linenweber v. Southwest Airlines Co.*, 693 F. Supp. 3d 661, 674 (N.D. Tex. 2023) (declining to take judicial notice of NTSB or OIG report concerning airplane engine failure for "the truth of disputed factual matters in either report"); ¶¶67-106.

failure, announced that the FDA was partially reversing its decision *the previous week* to stop all shipments of Elevidys in *all* populations. Dx 24 at 1. Instead, the FDA would *still* halt all shipments of Elevidys in non-ambulant patients, but would allow shipments for ambulant patients, though only with the most severe Black Box warnings and onerous monitoring requirements. ¶¶163, 174-75. Defendants bizarrely attempt to present this highly negative outcome as a ringing endorsement of rh74's safety. DB 9-10. It is not. Notably, Defendants' cherry-picked record omits a number of facts suggesting that this abrupt partial reversal was driven by political, rather than scientific, considerations. Almost immediately following CBER's total ban, the White House pressured the FDA to remove then-CBER chief Vinay Prasad (Marks' replacement); CBER shifted course in just a few days because of Prasad's forced removal.[5] Defendants ignore the Complaint's allegations regarding Sarepta's "formidable political lobbying apparatus" (¶129), and chose not to submit a February 2026 interview with FDA Commissioner Marty Makary who, on the heels of Elevidys' collapse, explained that drug companies "pressured [CBER] to approve" gene therapies using considerable political influence.[6] In any event, not only is **Exhibit 24** improperly offered for its "truth," the proposition for which it is cited has no bearing on the Complaint's allegations – namely, that Defendants misleadingly concealed serious safety issues from investors, which, once disclosed, devastated Sarepta's rh74 franchise. **Exhibit 24** is not entitled to judicial notice.

### C.    Pre- Class Period SEC Filings - Exhibits 37-38

Apparently abandoning their argument that pre-Class Period events are categorically irrelevant (DB 24, 28-29), Defendants submit two SEC filings that predate the Class Period by

---

[5] *See, e.g.*, Ned Pagliarulo & Ben Fidler, *FDA Allows Sarepta to Resume Some Elevidys Shipments*, BIOPHARMA DIVE (July 28, 2025), https://www.biopharmadive.com/news/sarepta-resume-elevidys-shipments-duchenne-fda-hold-lift/756107/ .

[6] CNBC, *FDA Commissioner Dr. Makary on Rare Disease Therapy Approvals, Internal Politics at the Agency* (Feb. 26, 2026), https://www.cnbc.com/video/2026/02/26/fda-commissioner-dr-makary-on-rare-disease-therapy-approvals-internal-politics-at-the-agency.html.

*approximately three years* as **Exhibits 37 and 38** (Sarepta's Form 10-Qs filed on May 6 and August 5, 2020, respectively). But, again, these SEC filings are referenced nowhere in the Complaint. Defendants again cite these documents in support of a "truth on the market" argument, claiming that these filings warned investors that the ESSENCE study was fatally underpowered and likely to fail – the truth the Complaint alleges Defendants' misstatements about ESSENCE concealed. DB 11, 25-26. But, once again, the actual document does not support the proposition for which it –disclose that *three years later* ESSENCE *was* radically underpowered and, therefore, virtually certain to fail. Indeed, even the "disclosure" on which Defendants rely characterizes the risk that COVID "could" impact study *results* as hypothetical. Dx 37 at 45; Dx 38 at 47. **Exhibits 37 and 38** have, at best, a tenuous connection to the legal sufficiency of the Complaint and judicial notice is, therefore, unwarranted. *Olsen v. Agenus Inc.*, 2026 WL 810814, at \*5 (D. Mass. Mar 24, 2026); *see also Shash v Biogen Inc.*, 627 F. Supp. 3d 84, 99 (D. Mass. Sept. 12, 2022). Moreover, as discussed above, Defendants' "truth on the market" argument cannot be resolved as a matter of law on the basis of extrinsic documents. Judicial notice is inappropriate for this purpose. *Amgen*, 2014 WL 12585809, at \*15.

D.    **Sarepta Call Transcripts, Press Releases, and Presentations – Exhibits 2, 11, 21, 26, 29, 30, 32, 33, and 36**

Defendants seek judicial notice of two purported Sarepta conference call transcripts (**Exhibits 2 and 36**), six purported Sarepta press releases (**Exhibits 11, 21, 26, 30, 32, and 33**), and a purported Company presentation (**Exhibit 29**) that are nowhere cited or referenced in the Complaint. The only purpose for which Defendants cite these exhibits is for the truth of the matters self-servingly asserted therein. *See, e.g.*, DB at 7 (citing **Exhibit 11** to make factual assertions about warnings regarding Elevidys' safety); DB 8-9 (citing **Exhibit 21** for facts about patient death); DB 10 (citing **Exhibit 26** to make factual assertions about Elevidys' efficacy); *id*. (citing

9

**Exhibit 29** to make factual assertions about what Sarepta's "plan was always" with respect to Sarepta's LGMD program); DB 11 (citing their statements about the LGMD portfolio's progress in **Exhibits 30 and 32, 33** as proof the progress described occurred). Some of these Exhibits are significantly outside the Class Period, including **Exhibits 29 and 36**, which predate the Class Period by more than two and a half years, and **Exhibit 26**, which post-dates the Class Period by three months. Because the Court cannot accept these documents for their truth, and because that is Defendants' only reason for submitting them, judicial notice is improper. *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 73-74 (1st Cir. 2021) (judicial notice inappropriate where purpose is "weighing [of] competing claims [by] both parties").

Defendants argue that these documents are judicially noticeable because the "released information was publicly available." RJN at 10. But the mere fact that a document is "publicly available" does not make it judicially noticeable. *See Olsen*, 2026 WL 810814, at *5.

**E.**     *Wall Street Journal* **Editorials – Exhibits 22 and 23**

Defendants submit two *Wall Street Journal* editorials concerning Elevidys as **Exhibits 22 and 23**. Neither are "integral" to the Complaint, or even referenced therein. Both opinion pieces post-date the July 18, 2025 corrective disclosure, at which point the Complaint alleges that the truth concerning rh74's safety and viability was fully revealed. Again, Defendants improperly cite these editorials only for the truth of the opinions assert therein – namely, that (at least in the minds of the lay *Wall Street Journal* editorial board) the FDA should not have pulled Elevidys from the market because DMD patients seeking treatment are entitled to freely assume the risks of whatever treatment they decide is worth pursuing. DB 9-10.

These editorials contain no scientific or medical analysis; at bottom, they reflect nothing more than political objections to perceived regulatory overreach. *See* Ex. 22 at 3 ("If Americans wanted fewer novel treatments, they could have elected Kamala Harris."). They shed no light on

what Sarepta actually knew or said during the Class Period, the FDA's decisional calculus, or what the market understood about rh74. They are irrelevant to this case and *certainly* irrelevant at the pleading stage, where the only question is the *legal* sufficiency of the Complaint. Indeed, courts have declined to judicially notice editorial and opinion articles precisely because "they reflect only the writer's opinion, which is merely speculation and cannot be a 'fact' commonly known throughout the court's territory or capable of sufficient accurate and ready determination by other credible sources." *Padilla v. City of Gallup*, 2006 WL 8444138, at *4 (D.N.M. June 28, 2006). And, as discussed, even where courts *do* take judicial notice of press coverage, they do so only for the fact that certain information entered the public domain, not for the truth of the matters asserted in the coverage. Once again, because Defendants' only purpose in submitting these articles is for the truth of the matters asserted therein, judicial notice is inappropriate.

## IV.    CONCLUSION

This Court should deny Defendants' Request as to the Challenged Exhibits and decline Defendants' invitation to accept *any* Exhibit for the truth of the matters asserted therein.

Dated: April 24, 2026

Respectfully submitted,

*/s/ Abe Alexander*
Karin E. Fisch (*pro hac vice*)
Abe Alexander (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
kfisch@gelaw.com
aalexander@gelaw.com

Brian J. Schall (*pro hac vice*)
Andrew J. Brown (*pro hac vice*)
William M. Brody (*pro hac vice*)

11

Adam L. Rosen (*pro hac vice*)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel.: (310) 301-3335
Fax: (310) 388-0192
brian@schallfirm.com
andrew@schallfirm.com
wbrody@schallfirm.com
adam@schallfirm.com

*Counsel for Lead Plaintiffs the Investor Group and Lead Counsel for the Proposed Class*

W. Mark Conover
Lucas F. Olts
**ROBBINS GELLER RUDMAN & DOWD LLP**
Tel.: (619) 231-1058
655 West Broadway Unit 1900
San Diego, CA 92101
mconover@rgrdlaw.com
lolts@rgrdlaw.com

*Counsel for Additional Plaintiff City of Pontiac Reestablished General Employees' Retirement System*

Theodore M. Hess-Mahan
**HUTCHINGS BARSAMIAN MANDELCORN, LLP**
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
Tel.: (781) 431-2231
thess-mahan@hutchingsbarsamian.com

*Local Counsel for Lead Plaintiffs the Investor Group*

12

## CERTIFICATE OF SERVICE

I, Abe Alexander, hereby certify that this document, filed on April 24, 2026, through the CM/ECF system, will be sent electronically to the registered participants as identified on their respective notices of electronic filing, and that paper copies will be sent to those non-registered participants, if any.

/s/ Abe Alexander
Abe Alexander